**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 23-154-2 |
| KHALIL JACKSON-FLETCHER | : | |

**<u>MEMORANDUM</u>**

**SURRICK, J.**                                                    **FEBRUARY 3, 2025**

The 11-count Indictment in this matter charges Defendant Khalil Jackson-Fletcher

("Jackson-Fletcher" or "Defendant") and his co-Defendant Christopher Burton ("Burton") with

conspiracy to commit kidnapping and other offenses relating to their alleged kidnapping of six

people, one of whom was a 10-month-old infant.  (*See* Indictment, ECF No. 1.)  Presently before

the Court is Jackson-Fletcher's Motion to Dismiss the Indictment with Prejudice or, in the

Alternative, for Severance of His Trial from That of His Co-Defendant Burton ("Motion to

Dismiss or Sever," ECF No. 71), and the Government's Response in Opposition thereto (ECF

No. 73.)  For the following reasons, Defendant's Motion will be denied.

I.      **BACKGROUND**

        A.      **Factual Background**

        The Indictment alleges that Jackson-Fletcher and Burton conspired with each other and

another individual, George Pollydore ("Pollydore"),[1] and used "means, facilities and

instrumentalities of interstate and foreign commerce," to kidnap six individuals identified as

"E.L.," "H.T.," "B.T.," "A.T.," "M.T.," and "H.H.  (Indictment ¶¶ 1-3; *see also id.* ¶¶ 4-12.)   As

to Defendant, the Indictment alleges, *inter alia*, that on or about December 18, 2021, Jackson-

---

[1] Pollydore was charged separately in Criminal Action No. 23-cr-61.

Fletcher and Burton, along with Pollydore, kidnapped E.L.; forced him into a vehicle at gunpoint; tied E.L.'s wrists and took his wallet and cell phone; used E.L.'s phone to transfer money from his account to an account owned by Pollydore; forced E.L. to withdraw cash from his bank accounts; and drove E.L. to his home, where Jackson-Fletcher entered and stole E.L.'s firearm. (*Id.*, Overt Acts ¶¶ 2(a)-(e).)

With respect to the other five alleged kidnappings, the Indictment avers that on or about February 4-6, 2022, Khalil-Jackson, with Burton and/or Pollydore, all armed with handguns, stole H.T.'s wallet and cell phone; used H.T.'s phone to transfer money from his bank accounts to accounts controlled by Pollydore; drove H.T. to and held him in the basement of a residence while they wire-transferred money from H.T.'s bank accounts; drove with H.T. to and entered H.T.'s residence, where B.T. and 10-month-old infant A.T. were present; forced H.T. and B.T. into the basement of their residence; physically assaulted and restrained H.T. and B.T.; forced H.T. to drive to several locations to purchase items using H.T.'s bank card and to withdraw cash from a bank account used to receive money taken from H.T. and B.T.; forced M.T. and H.H. into the basement of H.T.'s and B.T.'s residence when M.T. and H.H. separately arrived there; and took M.T.'s wallet and H.H.'s cell phone. (*Id.* ¶¶ 7(a)-(f), 8(a), 9(a)-(c), 9(g)-(h).) The Indictment further alleges that on February 6, 2022, after M.T. stated that he could not remember his phone password, Jackson-Fletcher picked up the infant A.T. by his ankle; held him upside down; threatened to drop him; tied a necktie around A.T.'s neck and lifted him off the ground; and handcuffed M.T.'s wrists, stepped on his back, and tied his legs to his hands. (*Id.* ¶¶ 9(e)-(f).)

## B.    Procedural History

The grand jury Indictment, returned on April 12, 2023, charges Jackson-Fletcher with conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c) (Count 1); five counts of

kidnapping involving interstate commerce, in violation of 18 U.S.C. § 1201(a)(1) (Counts 2-4, 6-7); one count of kidnapping a minor involving interstate commerce, in violation of 18 U.S.C. § 1201(a)(1), (g)(1) (Count 5); two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Counts 8, 10); and two counts of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts 9, 11).  Burton is charged with the same offenses except for the alleged kidnappings of M.T. and H.H charged in Counts 6-7.  (*See id.*)

Jackson-Fletcher and Burton were both arrested on April 13, 2023.  (ECF Nos. 11, 12.) At Jackson-Fletcher's initial appearance on April 14, 2023, the Court granted the Government's motion for temporary detention and scheduled a detention hearing and arraignment for April 18, 2023. [2]  (4/14/23 Minutes, ECF No. 7 (on file with Court).)  At his April 18, 2023 arraignment, Jackson-Fletcher stipulated to pretrial detention and entered pleas of not guilty to all counts of the Indictment.  (4/18/23 Minutes, ECF No. 16 (on file with Court).)

On April 26, 2023, Jackson-Fletcher and Burton each filed motions for an extension of the deadline to file pretrial motions.  (ECF Nos. 17, 18.)  On May 1, 2023, the Court granted these motions and set a trial date of June 5, 2023.  (ECF Nos. 20-23.)

On May 18, 2023, Jackson-Fletcher filed an unopposed motion to continue the trial date to January 8, 2024 (a continuance of approximately seven months), stating that "discovery in this matter is anticipated to be voluminous" and that the continuance was necessary "in order to adequately represent Defendant."  (ECF No. 25, ¶¶ 5-6.)  The motion represented that Jackson-Fletcher had been advised of and understood his speedy trial rights and the defense need for

---

[2] The Government filed a Motion for Pretrial Detention on April 18, 2023, the day of Jackson-Fletcher's arraignment.

adequate time to investigate and prepare, and that he agreed to the continuance. (*Id.* ¶¶ 7-8.) On May 22, 2023, the Court granted Defendant's motion and set a trial date of January 8, 2024. (ECF No. 26.) On May 23, 2023, Burton filed a similar unopposed motion to continue the June 5, 2023 trial date. (ECF No. 28.) On May 24, 2023, the Court granted Burton's motion for continuance and set the same trial date, January 8, 2024. (*See* ECF No. 33.) In granting these motions, the Court found that the ends of justice served by the continuance outweighed the best interest of the defendants and the public in a speedy trial.

On August 13, 2023, Burton retained new counsel, Michael Walker, Esq.[3] On October 23, 2023, Burton filed an unopposed motion to continue the January 8, 2023 trial date. (ECF No. 46). Jackson-Fletcher did not oppose this motion. On October 23, 2023, the Court granted the motion to continue, finding that the ends of justice served by the continuance outweighed the interest of the public and the defendants in a speedy trial, and set a trial date of March 11, 2024. (ECF No. 47.)

On February 2, 2024, Burton filed an unopposed motion to continue the March 11, 2024 trial, stating that counsel had a trial conflict, and that the Government and counsel desired more time "for an opportunity to discuss a non-trial [disposition]." (ECF No. 51.) Defendant Jackson-Fletcher did not oppose this motion. On February 20, 2024, the Court granted the motion, finding that the ends of justice served by the continuance outweighed the best interest of the public and the defendants in a speedy trial, and set a trial date of September 30, 2024. (ECF No. 52.)

On August 19, 2024, Burton filed an unopposed motion to continue trial, stating that the Government and counsel desired more time to discuss a non-trial disposition and that "**the**

---

[3] Burton was initially represented by appointed CJA counsel. (*See* ECF No. 8.)

**codefendant [Jackson-Fletcher] concurs**" in the requested continuance. (ECF No. 55 ¶¶ 4-5 (emphasis added).) Defendant Jackson-Fletcher did not oppose this motion. On August 21, 2024, the Court granted the motion, finding that the ends of justice served by the continuance outweighed the best interest of the public and the defendants in a speedy trial, and set a trial date of January 13, 2025. (ECF No. 56.)

On December 1, 2024, Jackson-Fletcher filed a Motion to Compel the Government to satisfy its expert disclosure requirements under Federal Rule of Criminal Procedure 16(a)(1)(G).[4] (ECF No. 61.) On December 12, 2024—approximately one month prior to the January 13, 2025, trial date—Burton's retained counsel filed a motion to withdraw. (ECF No. 62.) On December 17, 2024, all parties, including Jackson-Fletcher and his counsel, appeared before the Court for a status hearing relating to Burton's counsel's motion to withdraw. At the hearing, the Court permitted Burton's counsel to withdraw and, the same day, issued an Order granting counsel's motion and appointing new CJA counsel. (*See* 12/17/24 Hr'g Minutes, ECF No. 69 (on file with Court); Order, ECF No. 70.)

On December 27, 2024, Jackson-Fletcher filed the Motion to Dismiss or Sever. The Government filed its response on January 6, 2025, as directed by the Court. (ECF Nos. 72, 73.)

On January 7, 2025, Burton's new appointed counsel filed a motion to continue the January 13, 2025 trial date by approximately six months. (ECF No. 74.) The motion noted counsel's recent appointment and the need to review voluminous discovery, evaluate pretrial motions, conduct investigation, and confer with Burton. (*Id.* ¶¶ 4-6.) The Motion stated that the

---

[4] The Motion to Compel stated that "Mr. Jackson-Fletcher and the Government are working to resolve the outstanding discovery issues and the Government has provided some of [Defendant's] outstanding discovery requests." (Mot. to Compel ¶ 11, n.1.) On January 13, 2025, upon the agreement of the parties, the Court dismissed Defendant's Motion to Compel without prejudice as moot. (ECF No. 76.)

Government did not oppose the requested continuance.  (*Id.* ¶ 7.)  On January 8, 2025, the Court issued an Order adjourning the January 13, 2025 trial date and providing that a new trial date would be set by further order.  (ECF No. 75.)

## II.    DISCUSSION

### A.    Jackson-Fletcher's Sixth Amendment Right to Speedy Trial Has Not Been Violated[5]

"The Sixth Amendment to the United States Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.'"  *United States v. Williams*, 917 F.3d 195, 199 (3d Cir. 2019) (quoting U.S. Const. amend. VI.).  The Supreme Court has recognized, however, that "the right to speedy trial is a more vague concept than other procedural rights," such that its boundaries cannot be defined by a precise period of time.  *Barker v. Wingo*, 407 U.S. 514, 521 (1972).  In *Barker*, the Court set forth a four-factor test for examining alleged Sixth Amendment violations.  407 U.S. at 530–33.  "The inquiry focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his

---

[5] We note that although Defendant's Motion to Dismiss or Sever asserts a violation of his right to speedy trial under the Sixth Amendment and the Speedy Trial Act (*see* Mot. to Dismiss or Sever at 1), the accompanying Memorandum of Law expressly states that "Jackson-Fletcher does not move for dismissal pursuant to the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, because, until severance is granted, a delay caused by a co-defendant is attributable to a defendant under the Speedy Trial Act."  (Mem. in support of Mot. to Dismiss or Sever, ECF No. 71, at 6.)

As Defendant concedes, the delays resulting from defense motions and continuances granted by the Court in the interests of justice are excluded from Speedy Trial Act computations and, accordingly, Jackson-Fletcher's rights under the Speedy Trial Act have not been violated in this matter.  *See* 18 U.S.C. § 3161 (h)(1)(D), (H); (h)(6); (h)(7)(A).  On this point, we note that compliance with Speedy Trial Act limits weighs against Jackson-Fletcher's claim of a Sixth Amendment speedy trial violation.  As other courts have observed, "because the [Speedy Trial Act] was enacted largely to make defendants' constitutional speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated.'"  *United States v. Alvin*, 30 F. Supp. 3d 323, 340 (E.D. Pa. 2014) (quoting *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982)); *see also United States v. Gedeon*, No. 21-210, 2023 WL 3689610, at *3 (E.D. Pa. May 26, 2023) (quoting *Alvin*, 30 F. Supp. 3d at 340).

speedy trial right; and (4) the prejudice suffered by the defendant."  *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citing *Barker*, 407 U.S. at 530-33).  None of the four factors are either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial; rather, they are related factors and must be considered together with such other circumstances as may be relevant.  *Barker*, 407 U.S. at 533.

Although none of the *Barker* factors is dispositive, the length of delay entails two inquiries, the first of which is the preliminary question of whether the length of delay "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay," such that it "trigger[s] the speedy trial enquiry."  *Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (citing *Barker*, 407 U.S. at 530-31).  If the length of delay does not raise a presumption of prejudice, "there is no necessity for inquiry into the other factors that go into the balance."  *Barker*, 407 U.S. at 530.  If it does, "the length of the delay is also separately weighed in the court's analysis of the remaining factors."  *United States v. Claxton*, 766 F.3d 280, 294 (3d Cir. 2014) (citations omitted).  "'Presumptive prejudice,' when used in this threshold context simply 'marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry.'"  *Hakeem v. Beyer*, 990 F.2d 750, 759-60 (quoting *Doggett*, 505 U.S. at 652 n.1). "Such 'presumptive prejudice' cannot alone create a Sixth Amendment violation but 'it is part of the mix of relevant facts, and its importance increases with the length of delay.'"  *Id.* at 760 (quoting *Doggett*, 505 U.S. at 656).  In addition, the Supreme Court has instructed that "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."  *Barker*, 407 U.S. at 530-31 (noting, for example, that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge").

The following sets forth our application of the *Barker* factors to the circumstances of Defendant's Motion.

### 1.    Length of Delay

When Defendant filed the instant Motion, approximately 20 1/2 months had elapsed since his indictment.  This delay is not dispositive, but it is sufficient to warrant analysis under all four of the *Barker* factors.  *See Doggett*, 505 U.S. at 652, n.1 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year.") (citations omitted); *Hakeem*, 990 F.3d at 760 ("[A] delay of 14 months is . . . not dispositive in and of itself, but is sufficiently lengthy to warrant an inquiry into the other facts.") (citation omitted).   We note, however, that the period of delay in this case is significantly shorter than those the Supreme Court has characterized as "extraordinary."  *See Doggett*, 505 U.S. at 652 (noting "extraordinary" 8 1/2-year delay ); *Barker*, 407 U.S. at 533 (describing delay of more than five years as "extraordinary").  Moreover, this case does not involve an "ordinary street crime," but an alleged conspiracy among Jackson-Fletcher, Burton, and others to plan, execute, and conceal their involvement in the separate kidnappings of, and other alleged crimes against, E.L. and, more than a month later, five additional alleged victims.

### 2.    Reasons for Delay

This factor weighs against Jackson-Fletcher.  The delay here is almost entirely attributable to defense motions.  As noted above, both Jackson-Fletcher and Burton filed motions for extension of the pretrial motions deadline (*see* ECF Nos. 17, 18), followed by motions requesting a seven-month continuance of the initial June 5, 2023, trial date.  (*See* ECF Nos. 25, 28.)  Jackson-Fletcher's continuance motion noted that "discovery in this matter is anticipated to be voluminous, including law enforcement reports, videos, financial data, social media data and telephone data extractions," and stated that "[i]n order to adequately represent Defendant,

defense counsel needs adequate time to review discovery, determine what, if any pretrial motions are appropriate, conduct any necessary investigation, determine what, if any, experts need to be consulted and confer with her client about the substance of the discovery in order to advise her client whether a non-trial or trial disposition is appropriate." (ECF No. 25 ¶¶ 5-6.) Although Burton filed the three subsequent motions for continuance preceding Defendant's instant Motion to Dismiss or Sever (*see* ECF Nos. 46, 51, 55), Jackson-Fletcher did not oppose or object to those motions, the third of which represented that he **concurred** in the requested continuance. (*See* ECF No. 55 ¶ 5.) *See, e.g.*, *United States v. Thompson*, 716 F. App'x 69, 72 (3d Cir. 2017) ("Defendants bear the responsibility of delay caused by their co-defendants, and such delay cannot be attributed to the Government." (citing *Claxton*, 766 F.3d at 295)); *United States v. Rodriguez-Mendez*, No. 22-1422, 2023 WL 3378005, at *3 (3d Cir. May 11, 2023) (affirming district court ruling that delay did not violate Sixth Amendment and noting that while defendant "did not join in many of the [co-defendants'] requests for extensions, neither did he file any objections to them nor a motion to sever"), *cert. denied*, 144 S. Ct. 314 (2023).

### 3.    *Assertion of Speedy Trial Right*

The instant Motion is the first time Jackson-Fletcher has asserted his speedy trial right or sought severance of his case from Burton's. The Motion does not contend otherwise but notes that Jackson-Fletcher cannot be presumed to have waived his Sixth Amendment speedy trial right by inaction. (Mem. in support of Mot. to Dismiss or Sever at 6 (quoting *Barker*, 407 U.S. at 525).) The Supreme Court's rejection of the "demand-waiver" doctrine in *Barker*, however, does not relieve defendants of any responsibility for asserting their speedy trial rights. *Barker*, 407 U.S. at 531. As the Court explained:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reasons for the delay, and most particularly by the

personal prejudice, which is not always readily identifiable, that he experiences. **The more serious the deprivation, the more likely a defendant is to complain**. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. **We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial**.

*Id.* at 531-32 (emphasis added). Thus, Jackson-Fletcher's failure to assert his speedy trial right prior to the instant Motion weighs against a finding that the right has been violated. *See Rodriguez-Mendez,* 2023 WL 3378005, at *3 (defendant's failure to assert speedy trial rights until two months before trial weighed against finding a Sixth Amendment violation "since as *Barker* states, '[t]he more serious the deprivation, the more likely a defendant is to complain.'" (quoting *Barker*, 407 U.S. at 531)).

### 4.    *Prejudice to the Defendant*

The Supreme Court has identified "three types of harm that arise from unreasonable delay between formal accusation and trial: (1) 'oppressive pretrial incarceration;' (2) 'anxiety and concern of the accused;' and (3) 'the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence.'" *Claxton*, 766 F.3d at 296 (quoting *Doggett*, 505 U.S. at 654). "The burden of showing prejudice lies with the individual claiming the violation." *Hakeem*, 990 F.2d at 760. "Of the three types of prejudice, impairment of the accused's defense is the most serious," as such prejudice "skews the fairness of the entire system." *United States v. Wilson*, 216 F. Supp. 3d 566, 579 (E.D. Pa. 2016) (citing *Barker*, 407 U.S. at 528, 532 (internal quotations omitted), *aff'd*, 960 F.3d 136 (3d Cir. 2020). In comparison, "[c]redit for time served can mitigate the prejudice from pretrial incarceration, and some level of anxiety is unavoidable in every criminal case." *Id.* (citing *Hakeem*, 990 F.2d at 762).

Here, Jackson-Fletcher generally asserts prejudice due to his pretrial incarceration and the anxiety, concern, and disruption of his life caused by the weight of the charges and trial. However, such "[v]ague allegations of anxiety are insufficient to state a cognizable claim." *Hakeem*, 990 F.2d at 762.  Rather, "a defendant must show that his anxiety extended beyond that which 'is inevitable in a criminal case.'"  *Id.* (quoting *United States v. Dreyer*, 533 F.2d 112, 116 (3d Cir. 1976)).  Jackson-Fletcher also suggests that the passage of almost three years since the alleged offense conduct has affected the memory of potential witnesses and his own ability to assist in his defense.  On this point, Defendant's Motion acknowledges—correctly—that the time between the offense conduct and his Indictment does not constitute delay for speedy trial purposes.  *See, e.g.*, *United States v. Velazquez*, 749 F.3d 161, 183 (3d Cir. 2014) (noting that Sixth Amendment speedy trial delay is measured from the earlier of the date of arrest or indictment).  Jackson-Fletcher's assertions fail to show that the post-indictment delay in this case has caused him any actual prejudice.  Moreover, "because the delay [is] not attributable to the government, prejudice cannot be presumed—the burden of establishing prejudice stays with the defense." *Wilson*, 216 F. Supp. 3d at 579.  In sum, the balance of the *Barker* factors weighs against Defendant, and dismissal of the Indictment on Sixth Amendment grounds is not warranted.

### B.    Severance of Jackson-Fletcher From His Co-Defendant Is Not Warranted

Generally, two or more defendants may be tried together in a criminal action if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  Nevertheless, even where joinder is proper, Rule 14 permits the court to sever the defendants.  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).  Rule 14 provides that "[i]f the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant . . .

11

the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."  Fed. R. Crim. P. 14(a).

"Severance should only be granted 'if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'"  *United States v. Riley*, 621 F.3d 312, 335 (3d Cir. 2010) (quoting *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005)).   Moreover, as "acts committed by one [co-conspirator] in furtherance of the conspiracy [would be] admissible against the other" co-conspirator in a separate trial, severance is rarely required.  *United States v. Hart*, 273 F.3d 363, 370 (3d Cir.2001); *see also United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) ("[J]oint trials of defendants charged under a single conspiracy aid the finder of fact in determining the full extent of the conspiracy.") (citation omitted); *United States v. Ingio*, 925 F.2d 641, 656 (3d Cir. 1991) (noting that where defendants are charged with conspiracy, it is "customary to try persons charged as co-conspirators together, and severance of a co-conspirator's trial is required only for compelling reasons").  Defendants seeking a severance under Rule 14 bear a "heavy burden" and must demonstrate not only that the Court would abuse its discretion if it denied severance, "but also that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial."  *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (internal citation omitted).  "[D]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."  *Urban*, 404 F.3d at 775.

Here, Jackson-Fletcher has not shown that his right to a speedy trial will be compromised by being tried with his alleged co-conspirator, Burton.  He thus fails to meet the "heavy burden" to defeat the preference for joint trials, particularly in a case such as this one, where the evidence

concerning Jackson-Fletcher and Burton will be the same, and severance would result in duplicative proceedings.

## III.    CONCLUSION

For the foregoing reasons, Jackson-Fletcher's Motion to Dismiss the Indictment with Prejudice or, in the Alternative, for Severance of His Trial from That of His Co-Defendant Burton will be denied.  An appropriate Order follows.

**BY THE COURT:**

 */s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**